# PAUL K. SCHMIDT, JR. ET UX. v. BENEFICIAL FINANCE COMPANY OF FREDERICK

[No. 118, September Term, 1978.]

*Decided May 8, 1979.*

*Motion for reconsideration filed June 5, 1979; denied June 22, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Charles H. Slingluff* for appellants.

*Thomas B. Hudson,* with whom were *Alan N. Gamse* and *Semmes, Bowen & Semmes* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On 30 March 1977 Paul K. Schmidt, Jr. and Patricia Schmidt, his wife, executed and delivered a mortgage to Beneficial Finance Co. of Frederick, a Delaware corporation qualified to do business in Maryland, and licensed to engage in making loans under the Maryland Consumer Loan Law. The mortgage secured a loan of $3,500 made by Beneficial to the Schmidts. It called for repayment, "together with interest on the unpaid balance thereof at the rate of Eighteen percent (18%) per annum (1½% per month) . . . in 60 successive monthly installments of $88.87 each, commencing one month from the date" thereof. The indebtedness and the manner and terms of payment were further evidenced by and set forth in a promissory note of even date. The mortgage conveyed to Beneficial certain real property of the Schmidts located in Frederick County, Maryland, which was subject to a prior incumbrance and had on it a dwelling designed principally as a residence with accommodations for not more than four families. The Schmidts repaid the loan by 19 May 1977.[1]

A question arose as to the legality of the interest charged. The question was presented for judicial determination upon the filing of a class action in assumpsit by the Schmidts against Beneficial in the Circuit Court for Frederick County

---

1. The mortgage was recorded among the Land Records of Frederick County on 14 April 1977. It bears an executed short release under the date of 19 May 1977. It does not reflect that the release had been recorded.

on 22 February 1978. The Schmidts sought, on behalf of themselves and all other persons so similarly situated, the return of all monies over and above the principal amount of the loan proceeds, damages in the amount of three times the amount of interest and charges collected, attorneys' fees and costs of suit. Beneficial demurred. The demurrer was sustained without leave to amend. The Schmidts noted an appeal to the Court of Special Appeals. We ordered the issuance of a writ of certiorari before decision by that court.

The Secondary Mortgage Loan Law added new §§ 39-70 to Art. 66 of the Code (1957, 1964 Repl. Vol.). It was enacted, effective 1 January 1968, by Acts 1967, ch. 390, according to its title,

> to *generally* provide for the licensing of persons in the business of negotiating secondary mortgage loans, and to *generally* provide for the regulations of such persons and such loans, to give the Banking Commissioner certain duties and powers in the regulation of such persons and such loans, to provide penalties for violations and to *generally* relate to secondary mortgage transactions and the regulation of persons in this business. (Emphasis added).

At the time Beneficial made the loan to the Schmidts, the Maryland Secondary Mortgage Loan Law, with respect to the licensing provisions, was as set out in Maryland Code (1957, 1972 Repl. Vol.) Art. 66, §§ 39-71, and, with respect to credit provisions, was as set out in Code (1975) §§ 12-401 to 12-415 of the Commercial Law Article.[2] It is manifest that the Schmidt loan was the type of loan subject to regulation under the Secondary Mortgage Loan Law. Although Beneficial was

---

2. The Commercial Law Article was enacted by Acts 1975, ch. 49 as a part of the general revision of the Maryland Code. The General Revisor's Note to subtitle 4 "Secondary Mortgage Loans-Credit Provisions," title 12 of the Commercial Law Article, stated that the credit and similar consumer oriented provisions of Article 66 relating to secondary mortgages were placed in title 12 and the provisions which deal with licensing and regulation were retained in Article 66 pending future inclusion in the proposed Business Regulation Article.

Unless otherwise indicated, section references hereafter are to the Commercial Law Article of the 1975 Code.

not licensed under that law,[3] it was permitted to make a loan under it as exempt from its licensing requirements. § 12-402 (a).[4] Acts 1975, ch. 574, § 1, effective 1 July 1975, rewrote the licensing provisions of the Secondary Mortgage Loan Law prescribed by § 41, Article 66 of the Code (1957, 1972 Repl. Vol.). As rewritten, § 41 has two aspects. It first provides that "[n]o person[5] other than any banking institution, savings bank, or association subject to Article 11 of this Code, any federal savings and loan association, insurance company, State-chartered building and loan association or any other financial institution which is subject to any other law of this State or of the United States regulating the power of such institution to engage in mortgage loan transactions shall make or negotiate, or offer to make or negotiate, any secondary mortgage loan except under the provisions of [the Secondary Mortgage Loan-Licensing Provisions] subtitle." It then requires, with five express exceptions, any person who makes a secondary mortgage loan to first obtain a license from the Bank Commissioner of Maryland or the deputy bank commissioner. Beneficial was exempt from the licensing requirements under the first exception which designates the same financial institutions excepted from the prohibition in the first aspect. Code (1957, 1972 Repl. Vol., 1978 Cum. Supp.)

---

3. The Schmidts alleged in their declaration that Beneficial was "not licensed in this State to make second mortgages." The truth of this is assumed for the purpose of ruling on the demurrer. Schwartz v. Merchants Mort. Co., 272 Md. 305, 307-308, 322 A. 2d 544 (1974).

4. Section 12-402 (a) provides:

A person may not make a loan under [the Maryland Secondary Mortgage Loan Law-Credit Provisions] unless he is licensed under or exempt from the licensing requirements of the Maryland Secondary Mortgage Loan Law-Licensing Provisions.

" 'Person' includes an individual, corporation, business trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity." § 12-401 (i).

See Acts 1976, ch. 282, § 1, which deleted from the former provision of § 12-402 (a) the qualification that the loan be made "in the regular course of business." According to the Supplemental Revisor's Note, the amendment was made so as to conform to a like change made by Acts 1975, ch. 574 in Article 66, § 41 of the Code.

5. "Person" has the same meaning in the licensing provisions as in the credit provisions. Code (1957, 1972 Repl. Vol., 1978 Cum. Supp.) Art. 66, § 40 (b). Acts 1975, ch. 49 amended this subsection to conform the definition of "person" to the definition in the credit provisions. See note 4, supra.

Art. 66, § 41 (1). Beneficial expressly declared in its brief and in oral argument before us that it was a financial institution which in fact was subject to a law of this State regulating the power of such institutions to engage in mortgage loan transactions.[6] Therefore, Beneficial clearly had the authority to make a loan under the Secondary Mortgage Loan Law. § 12-402.

The loan to the Schmidts which Beneficial was authorized to make under the Secondary Mortgage Loan Law was patently "a secondary mortgage loan" within the meaning of that law.

> "Secondary mortgage loan" means a loan or deferred purchase price secured in whole or in part by a mortgage, deed of trust, security agreement, or other lien on real property located in the State, which property:
>
> (i) Is subject to the lien of one or more prior encumbrances, except a ground rent or other leasehold interest; and
>
> (ii) Has a dwelling on it designed principally as a residence with accommodations for not more than four families. [§ 12-401 (j) (1).]

The amount of a secondary mortgage loan is qualified only to the extent that it may be "in such an amount that the net proceeds of the loan equal a predetermined sum...." § 12-404 (a) (1).

Beneficial's exemption from the licensing requirements of the Secondary Mortgage Loan Law also served to make it a "lender" in the contemplation of that law.

> "Lender" means:
>
> (1) A licensee; or
>
> (2) A person who makes a secondary mortgage loan but is exempt expressly from the licensing requirements of the Maryland Secondary

---

6. Although made in another context, the concession was clear. We assume for the purpose of decision that it was correct in substance.

Mortgage Loan Law-Licensing Provisions. [§ 12-401 (c).]

As a lender under the Secondary Mortgage Loan Law, Beneficial could not

> make or offer to make any secondary mortgage loan except within the terms and conditions authorized by [the Secondary Mortgage Loan Law] subtitle. [§ 12-412.]

Specifically, it was bound by the express proscription that a lender

> may not directly or indirectly, contract for, charge, or receive, any interest, discount, fee, fine, commission, brokerage, charge, or other consideration in excess of that permitted by [the Secondary Mortgage Loan Law] subtitle. [§ 12-411.]

A lender may "[t]ake interest in advance on the full amount of the loan for the period from the date the loan is made to the date of maturity of the final installment." § 12-404 (a) (2). But

> [t]he total amount of interest may not exceed the amount that would accrue throughout the term of the loan if charged at the rate of 12 percent per annum on the unpaid principal balances outstanding from time to time. [§ 12-404 (b).] [7]

With exceptions not here relevant, a secondary mortgage loan

> shall be amortized in equal or substantially equal monthly installments without a balloon payment at maturity. . . . [§ 12-404 (c).]

---

7. *See* S. B. 83, passed 21 February 1979, signed by the Governor 23 February 1979 and effective from date of passage, repealing and reenacting, with amendments, § 12-103 (b) and (c), and providing that a lender may charge interest at any effective rate of simple interest under certain conditions. *See also* S. B. 252 and S. B. 586, which were passed by the 1979 General Assembly and are awaiting action by the Governor. They conform the permissible rate of interest on secondary mortgage loans to the provisions of S. B. 83.

The mortgage here called for the Schmidts to repay Beneficial a loan in the amount of $3,500 "together with interest on the unpaid balance thereof at the rate of Eighteen percent (18%) per annum (1½% per month) . . . in 60 successive monthly installments of $88.77 each, commencing one month from the date [of the mortgage]." The rate of interest charged was in excess of that permitted to be charged on a secondary mortgage loan and, thus, was in violation of the Secondary Mortgage Loan Law.[8]

Beneficial does not appear to dispute any of this. It recognizes, implicitly at the least, that the loan fell within the definition of a secondary mortgage loan which it was authorized to make, and that the rate of interest exceeded that authorized. But, it urges, the loan was not subject to the Secondary Mortgage Loan Law. In its view, that law did not come into play. Rather, it claims, the loan was governed by the Maryland Consumer Loan Law, Code (1957, 1976 Repl. Vol.) Art. 11, §§ 163-206 (licensing provisions) and Code (1975) §§ 12-301 to 12-316 of the Commercial Law Article (credit provisions). Beneficial's argument boils down to this. It was a licensee under the Consumer Loan Law. § 12-301 (d). As a licensee, it could engage in the business of making loans thereunder. § 12-302. The loan it made to the Schmidts was in an amount permitted for a consumer loan, that is, not to exceed $3,500. § 12-303. It was not prohibited from taking a mortgage on real property to secure the loan.[9] Therefore, it

----

8. The civil penalties authorized to be imposed upon a lender for violating any provision of the Secondary Mortgage Loan Law, except "a bona fide error of computation," are set out in § 12-413. A lender

> may collect only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan. In addition, a lender who knowingly violates any provision of this subtitle also shall forfeit to the borrower three times the amount of interest and charges collected in excess of that authorized by law.

There are criminal penalties for a willful violation. § 12-414.

9. The Consumer Loan Law does not, in express language, authorize a lender to take a mortgage on real property to secure the repayment of the loan. However, § 12-311 (b) provides:

> A lender may not take any security interest in:

> (1) Real property for any loan under $2,000 in value or amount. . . .

was entitled to charge interest of 18% per annum as within the rate authorized by the Consumer Loan Law. § 12-306 (a). The Secondary Mortgage Loan Law does not expressly except loans meeting the criteria set out in the Consumer Loan Law, but Beneficial would have us read such an exception into the law. The definition of "secondary mortgage loan," it urges, "can be read to include only loans such as those set forth in the definition which are not otherwise regulated by Maryland Law." But, we have often said that "[a] court may not insert ... words to make a statute express an intention not evidenced in its original form." *Police Comm'r v. Dowling,* 281 Md. 412, 419, 379 A. 2d 1007 (1977), citing *Harden v. Mass Transit Adm.,* 277 Md. 399, 406, 354 A. 2d 817 (1976); *Patapsco Trailer v. Eastern Freight,* 271 Md. 558, 563-564, 318 A. 2d 817 (1974); *Giant of Md. v. State's Attorney,* 267 Md. 501, 512, 298 A. 2d 427, *appeal dismissed,* 412 U. S. 915 (1973). Furthermore, we observe that the Legislature did expressly spell out an exclusion from secondary mortgage loans relating to loans to corporations. § 12-401 (j) (2) (i). And in 1975 it added a second exclusion with respect to loans for a business purpose or commercial investment. § 12-401 (j) (2) (ii). Had it intended to exclude consumer loans also, it could have easily so provided.

In *Police Comm'r v. Dowling,* 281 Md. 412, 379 A. 2d 1007 (1977), Smith, J., speaking for the Court, summarized our many holdings relative to statutory construction.

> The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent. In determining that intent the Court considers the

---

Subsection (1) and (2) of § 12-307 allow the lender to collect from the borrower "[t]he fees paid to a public official or governmental agency for recording or satisfying a ... mortgage ... on any property securing a loan," and "[t]he title insurance premiums or reasonable attorney's fees paid for searching and insuring the title to any real property securing a loan." Section 12-308 (d) (2) requires the lender to release any mortgage which no longer secures any indebtedness to the lender. Section 12-312 (a) (1) permits the lender to collect, at the option of the borrower, the premiums paid to insure real property securing a loan. It seems that a lender under the law may take a mortgage on real property to secure a loan in an amount of $2,000 to $3,500 inclusive.

We note that the Schmidts do not suggest that the loan violated any provision of the Consumer Loan Law.

> language of an enactment in its natural and ordinary signification.... A corollary to this rule is that if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly.... Where two statutes deal with the same subject matter ..., they must be construed together if they are not inconsistent with one another. Thus, to the extent possible, full effect should be given to each.... This is true notwithstanding the fact that the statutes may have been enacted at different times with no reference to each other, because in that case the rule is that statutes must be harmonized to the extent possible.... [*Id.* at 418-419 (citations omitted).]

We find no ambiguity or obscurity within the confines of the Secondary Mortgage Loan Law with respect to the interest which may be charged on a secondary mortgage loan or regarding the prohibition against charging in excess of that permitted. As we have indicated, the law unequivocally declares that "[t]he total amount of interest may not exceed the amount that would accrue throughout the term of the loan if charged at the rate of 12 percent per annum on the unpaid principal balances outstanding from time to time." § 12-404 (b). It flatly forbids a lender from charging *any interest* in excess of that amount. § 12-411. It baldly proscribes the making of *any secondary mortgage* loan except within the terms and conditions authorized by it. § 12-412. In the face of this clear language we need look no further to ascertain the legislative intent. The Legislature certainly intended that the terms and conditions of the Secondary Mortgage Loan Law apply to any loan which is made by a lender as defined by the law and which is within the meaning of a secondary mortgage loan.

Beneficial does not suggest that there is any ambiguity within the Secondary Mortgage Loan Law. The ambiguity perceived by it is disharmony between the provisions of that law and the permissive language of § 12-306: "A lender may charge interest on a loan at a rate not exceeding ... 18 percent

simple interest per annum." Disharmony exists only if this section is read as an overriding blanket permission to charge such a rate in all circumstances. In the face of the clear prohibitions of the Secondary Mortgage Loan Law, however, § 12-306 may not be so broadly read.

We think that the loan to the Schmidts was controlled by the Secondary Mortgage Loan Law, and interest charged thereon was legally limited to 12% per annum, as provided in § 12-404. This view gives the greatest possible effect to both the Consumer Loan Law and the Secondary Mortgage Loan Law. An indebtedness meeting the criteria of the Consumer Loan Law is ordinarily governed by that law, but not when the lender secures it by a secondary mortgage as defined by the Secondary Mortgage Loan Law.

Although the main thrust of Beneficial's argument is directed to the implied exception to the Secondary Mortgage Loan Law which it reads into the statute, it looks also to 59 Opinions of the Attorney General 483 (1974), in which it was concluded that a mortgage on real property could be taken as security for a consumer loan of $2,000 or more at an interest rate of 18% without violating either the Secondary Mortgage Loan Law or statutory provisions regarding interest rates permitted on first mortgages, Code (1957, 1972 Repl. Vol., 1974 Cum. Supp.) Art. 49, § 13 (a).[10] The Attorney General relied on the law relating to first mortgages and did not affirmatively attempt to reconcile his position with the Secondary Mortgage Loan Law. He also sought support in *Finance Company, Inc. v. Catterton,* 161 Md. 650, 158 A. 16 (1932). That case concerned whether the Uniform Small Loan Law applied to loans secured by the pledge of real property. Our predecessors held that it did, but on the rationale that the Legislature, in repealing a limitation that small loans could only be secured by chattel mortgages or bills of sale, thereby permitted the law regarding small loans to apply to such loans on real estate, personal property, or both. *Catterton* deals with a different statutory relationship than

---

10. Art. 49, § 13 (a) was subsequently encompassed in Code (1975) § 12-103 of the Commercial Law Article. *See* Code (1975, 1978 Cum. Supp.) § 12-103 and footnote 7, *supra.*

the one before us; it is not factually or legally apposite.[11] Beneficial argues that the Attorney General's opinion is a contemporaneous construction of the Consumer Loan Law which should not be disregarded except on the most imperative ground. The imperative ground here is that we do not agree with the conclusion reached by the Attorney General. We are not bound by an opinion of the Attorney General, and we do not find his opinion here to be persuasive. *Drug & Chem. Co. v. Claypoole,* 165 Md. 250, 257, 166 A. 742 (1933). The rule of contemporaneous construction does not preclude inquiry by the courts into the correctness of the construction. *Bouse v. Hutzler,* 180 Md. 682, 687, 26 A. 2d 767 (1942). And, in any event, the rule of contemporaneous construction comes into play only when there is a statutory ambiguity. *Falcone v. Palmer Ford,* 242 Md. 487, 494, 219 A. 2d 808 (1966). *See Hunt v. Montgomery County,* 248 Md. 403, 414-415, 237 A. 2d 35 (1968). We have found no ambiguity here.

Beneficial suggests that it is exempt from the Secondary Mortgage Loan Law under § 41 of Art. 66. Its notion is that as it is one of the institutions excepted from the prohibition against making secondary mortgage loans, it may, therefore, make such loans without conformance with the Secondary Mortgage Loan Law. Section 41, however, deals only with licensing, and although Beneficial may make such loans without first obtaining a license thereunder, when it does, it is bound by the provisions of § 12-412 forbidding a lender to make any secondary mortgage loan except within the terms and conditions authorized by the Secondary Mortgage Loan Law.

Consumer loans are under the supervision of the Commissioner of Consumer Credit. § 12-301 (b); Art. 11, § 163 *et seq.* Secondary Mortgage Loans are under the supervision of the Bank Commissioner. § 12-401 (b); Art. 66, § 39 *et seq.* Beneficial opines that this "leads to an absurd result" because "Consumer Loan Licensees who take secondary mortgages in connection with consumer loans are

---

11. Beneficial also cites Standard Founders v. Wiley, 162 Md. 81, 158 A. 353 (1932). It simply follows *Catterton.*

thereby required to make such loans in conformity with regulations promulgated by the Banking Commissioner." It refers to the loan statement from a lender to a borrower required, as to consumer loans by § 12-308, and, as to secondary mortgage loans by regulation .09, ch. 02, subtitle 03, title 09, Code of Maryland Regulations. It declares: "Such regulations [of the Banking Commissioner with respect to secondary mortgage loans] clearly conflict with the provisions of the Consumer Loan Law, and infringe upon the authority of the Commissioner of Consumer Credit to regulate Consumer Loan Licensees." Beneficial thinks that it is "inconceivable that the legislature could have intended such a collision of regulatory authority without expressly providing a resolution for the conflict." If there be a conflict, the resolution is obvious — when a secondary mortgage loan is made, the Secondary Mortgage Loan Law and regulations promulgated thereunder prevail.

The short of it is that the Secondary Mortgage Loan Law deals specifically with second mortgages of a carefully defined nature in such a way that there is a clear and manifest intent to limit the Consumer Loan Law with respect to them. *See City of Baltimore v. Clerk,* 270 Md. 316, 319, 311 A. 2d 261 (1973). Simply stated, if a loan within the meaning of a secondary mortgage loan under the Secondary Mortgage Loan Law is made by a lender as defined by that law, the loan is subject to the provisions of the Secondary Mortgage Loan Law. This is so even though the loan might fit into the category of loans which may be made under the Consumer Loan Law and even though the lender also might fall within the meaning of a lender or is a licensee under that law. This is the clear import of the simple, direct, plain and unambiguous language of the Secondary Mortgage Loan Law, leaving no doubt of the legislative intent and purpose.

"[W]hen we consider the propriety of an order sustaining a demurrer to a bill of complaint without leave to amend, we are required to assume, for the purposes of the ruling, the truth of all material and relevant facts that are well pleaded as well as all inferences which can be reasonably drawn from those well pleaded facts." *Schwartz v. Merchants Mort. Co.,*

272 Md. 305, 307-308, 322 A. 2d 544 (1974). The "Bill of Complaint" here alleged that the Schmidts and other known and unknown parties have borrowed money from Beneficial secured by means of second mortgages, that Beneficial was not licensed in Maryland to make second mortgages, that it "did knowingly and willfully charge a rate of interest on said loans that exceeds the amount allowed by law," and that it "had knowledge of the secondary mortgage law at the time of the securing of said loans." [12] In light of our discussion, the allegations of the bill were adequate to state a cause of action. The demurrer should have been overruled. *See Bio-Ramo v. Abrams,* 229 Md. 494, 499, 184 A. 2d 831 (1962).

> *Judgment of the Circuit Court for Frederick County reversed; case remanded for further proceedings; costs to be paid by appellee.*

---

12. In a "Supplemental Memorandum in Support of Demurrer," Beneficial assumed for the purposes of the demurrer that the loan to the Schmidts met the criteria of a "secondary mortgage loan." The trial court sustained the demurrer for the reasons set out in Beneficial's Memorandum and Supplemental Memorandum in support of its demurrer. It refused leave to amend because "the sole question raised by this litigation is one of law."