**FIRST NATIONAL CONSUMER DISCOUNT COMPANY, a corporation of the State of Pennsylvania, Plaintiff Below, Appellant,**

v.

**John W. FULLER, Jr. and Barbara A. Fuller, his wife, Defendants Below, Appellees.**

Supreme Court of Delaware.

Submitted Feb. 15, 1980.

Decided Aug. 27, 1980.

Rehearing Denied Sept. 18, 1980.

L. Kent Wyatt (argued) of Aerenson, Balick & Ferrara, Wilmington, for plaintiff–appellant.

Alene S. Berkowitz (argued) of Knecht, Greenstein, Schagrin & Berkowitz, Wilmington, for defendants–appellees.

Before DUFFY, QUILLEN and HORSEY, JJ.

PER CURIAM:

We state the facts with heavy reliance on the letter opinion of the Superior Court and the briefs filed in this Court.

In September, 1965, the defendants, John and Barbara Fuller, purchased their family home in Brandywine Hundred (Delaware residential property). Since the time of the purchase, the property has been subject to a first mortgage. The defendants are the principal and sole owners of John W. Fuller & Sons, Inc. (the corporation), a Delaware corporation, in the plumbing and air–conditioning business.

On October 29, 1973, plaintiff First National Consumer Discount Company (First National) made a loan to the corporation in the amount of $20,000.00. The entire obligation of the corporation, consisting of the net proceeds plus interest and charges, was $40,920.00 which was payable in monthly installments of $341.00 over a ten–year period. The judgment note is signed by the Fullers in both their corporate capacity and as individual guarantors. As security for the loan, the Fullers, as guarantors of the corporation, gave mortgages to First National on Delaware real property owned by the Fullers including a second mortgage on the Fullers' Delaware residential property.

The corporation failed to make the payments which are due and First National claims a balance of $26,147.00, which figure is not conceded by the defendants. On February 21, 1978, First National filed a foreclosure complaint for the amount due with a view to a levy on the Delaware residential property.

The defendants claim that the obligation relied upon is unenforceable because of the Delaware law governing secondary mortgage loans found at 5 Del.C., Ch. 31. The plaintiff argues that the Secondary Mortgage Act does not apply to this obligation because the Delaware residential property serves merely as collateral and guaranty for payments on a loan made to a corporation. The Court below disposed of this contention with the following language:

"In my view, the plaintiff's position cannot be reconciled with the purpose of the language of the Secondary Mortgage Loan Act. The Act appears to have been designed to protect Delaware residents from predatory secondary mortgage loan practices, exorbitant charges, and misleading advertising. The provisions of the Act would be almost meaningless if they could be so easily circumvented because the applicability of the Act is deemed to be conditioned upon the particular status of the loan recipient. The defendants' home was subjected to the risk of foreclosure whether the loan was made to defendants personally or to a corporation owned by them with their property pledged to secure it. There is no language in the Act which suggests the distinction proposed by defendants. The Maryland Court of Appeals, in discussing a substantially similar act, stated the very simple proposition that:

" '. . . if a loan within the meaning of a secondary mortgage loan under the Secondary Mortgage Loan Law is made by a lender as defined by the law, the loan is subject to the provisions of the Secondary Mortgage Loan Law.' Schmidt v. Beneficial Finance Company of Frederick, Md. App., [285 Md. 148] 400 A.2d 1124 (1979)

"I am persuaded that the loan to the defendants is controlled by the terms of the Secondary Mortgage Loan Act."

We agree with the conclusion of the Superior Court in this respect.

There is no dispute that the loan documents involved in this case violate certain provisions of the statute governing secondary mortgage loans including provisions relating to powers of attorney, acceleration

clauses and interest charges. Consequently, this Court need not examine in detail the provisions set forth in the loan papers and the provisions of the statute violated thereby. Nor do we see any compelling reason why the Court should consider on appeal for the first time arguments of the plaintiff based on due process or choice of law, even if it be assumed there might be some merit to the arguments, an assumption we find not likely to have much basis in fact. These issues can frequently involve factual matters appropriately explored at the trial level and we find in the facts of this case no injustice in a foreclosure for failure to raise the issues below. Supreme Court Rule 8.

Thus, we conclude that the statute is applicable to the transaction in question and turn our attention to the second question dealt with by the Court below, the section of the statute dealing with enforceability of a loan not made in compliance with the statute. The language of this section found at 5 *Del.C.* § 3129 reads as follows:

> "No obligation arising out of a secondary mortgage loan shall be enforceable in the courts of this State unless such loan was negotiated and made in full compliance with the provisions of this chapter."

The Superior Court found the 1966 statute provided for a forfeiture of the money loaned based on the language of the statute and the fact that the statute was copied from a similar New Jersey act which has been so construed. See *Oxford Consumer Discount Co. v. Stetanelli*, N.J.Super.App. Div., 102 N.J.Super. 549, 246 A.2d 460 (1968), N.J.Super.App.Div., 104 N.J.Super. 512, 250 A.2d 593 (1969), aff'd N.J.Supr., 55 N.J. 489, 262 A.2d 874 (1970). These decisions, however, coming as they do after the enactment of our statute, are not viewed as presumptively "borrowed" by our General Assembly. *Heckman v. Heckman*, Del. Supr., 245 A.2d 550, 551, ftnt. 1 (1968). In our judgment, it is not necessary to determine whether the statutory language requires the construction that the lender vis–a–vis the borrower must forfeit the principal amount of the loan as well as the contracted for interest and service charges. It is arguable that the statute should be con-

sidered as primarily directed to the potentially oppressive terms of the loan contract. Even giving the statute a literal meaning, such a reading may not foreclose restitutional recovery from the borrower of the principal amount on some equitable basis independent of the loan contract. But that question need not be decided in this case.

■ As we see it, this case is narrower. The defendants here are individual guarantors for the corporation and the loan was admittedly for the corporation's benefit. The obligation of the individual guarantors is clearly one "arising out of a secondary mortgage loan" and can in fact be considered as within the category of potentially oppressive terms of such borrowing. In this context, the language of the statute bars enforcement of this "obligation arising out of a secondary mortgage loan".

The judgment of the Superior Court is affirmed.