Kenneth JOHNSON and Nancy Johnson, his wife, a/k/a Kenneth E. Johnson and Nancy Judy O'Neil Johnson, Defendants Below-Appellants/Cross Appellee,

v.

RONAMY CONSUMER CREDIT CORPORATION, a corporation of the Commonwealth of Pennsylvania, Plaintiff Below-Appellee/Cross Appellant.

Supreme Court of Delaware.

Submitted: Jan. 7, 1986.
Decided: Sept. 30, 1986.

**684**

Robert K. Pearce (Argued) and James F. Kipp of Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, for appellants/cross appellee.

Alene S. Berkowitz (Argued) of Berkowitz, Greenstein, Schagrin & Coonin, P.A., Wilmington, for appellee/cross appellant.

Before HORSEY, MOORE and WALSH, JJ.

HORSEY, Justice:

This appeal and cross-appeal require us to construe the provisions of the Delaware Secondary Mortgage Loan Act, 5 *Del.C.*, chapter 31 (hereafter the "Act"). We are required to determine its application to a foreign creditor's suit (following the borrower's default) to foreclose a second mortgage granted by guarantors of a loan—Delaware residents—against their residential real estate in Delaware. However, the foreclosing creditor alternatively seeks a money judgment against the guarantors on collateral undertakings.

The action was commenced in Superior Court as a suit by a Pennsylvania lender, Ronamy Consumer Discount Company, Inc., a Pennsylvania corporation (hereafter "Ronamy" or "lender"), to foreclose a second mortgage under a summary execution process known as a writ of *scire facias sur mortgage* authorized by 10 *Del.C.* § 5061. Defendants Kenneth Johnson and Nancy Johnson, his wife, are the mortgagors and also co-guarantors and sureties of a commercial installment loan made by Ronamy in the Commonwealth of Pennsylvania to Pee Wee's Diner, Inc., a Pennsylvania corporation ("Diner" or "borrower"). Diner has defaulted on the loan; and the principal guarantor of the loan, James DeVico, president of Diner and brother of Nancy Johnson, has filed for bankruptcy. When the Johnsons failed to file a timely response to the Complaint, Ronamy obtained a default judgment against defendants and scheduled a sheriff's sale of defendants' Delaware residence.

Ronamy also joins in its mortgage foreclosure suit claims for *in personam* money judgments against the Johnsons based on their concurrently executed installment judgment note and separate agreement of "guarantee and suretyship." Under the latter instrument, the Johnsons guaranteed Diner's performance of the loan agreement and DeVico's primary security agreements, including DeVico's grant of a second mortgage against real estate owned by him in Pennsylvania.

The sheriff's sale was stayed and ultimately Superior Court vacated the default judgment following defendants' motion for relief under Superior Court Civil Rule 60(b). Following defendants' answer, Ronamy moved to strike the defendants' affirmative defenses and for summary judgment. Ronamy concedes that its mortgage is invalid under the Delaware Act but contends that Pennsylvania law, rather than the Delaware statute, controls this transaction.

In an unreported decision, Superior Court, in July, 1984, ruled the Delaware Act to apply and declared Ronamy's second mortgage to be unenforceable under the Act. However, the Court then found the invalid Delaware second mortgage to be "the only portion of the transaction to which the Delaware Secondary Mortgage Act has application." The Court ruled "that the guaranty, because it was executed pursuant to a Pennsylvania secondary mortgage, is unimpaired and enforceable." The Court then granted Ronamy summary judgment on the Johnsons' guaranty of all undertakings except the Del-

aware secondary mortgage. Following reargument, the Court, one year later in July 1985, entered a money judgment for Ronamy and against the Johnsons on the guaranty, but otherwise ruled that the second mortgage held by Ronamy on the Johnsons' Delaware residence was unenforceable under 5 *Del.C.* § 3129.

The Johnsons appeal Superior Court's grant of a money judgment against them on their agreement of guaranty; and Ronamy cross-appeals the Court's ruling that the Delaware Secondary Mortgage Act applies to the transaction so as to render unenforceable Ronamy's second mortgage against the Johnsons' Delaware residence.

We agree with Superior Court that the Delaware Secondary Mortgage Act, 5 *Del.C.*, chapter 31, applies to this transaction and invalidates the mortgage. Therefore, we affirm the Court's ruling that the second Delaware mortgage granted by the Johnsons to Ronamy is unenforceable. The terms thereof admittedly fail to comply with the Delaware Act and Ronamy also failed to comply with the licensing requirements of the Act. However, we do not agree with Superior Court's limited construction of the Act as rendering unenforceable only the Johnsons' invalid second mortgage and as leaving "unimpaired and enforceable" the Johnsons' guaranty of Diner's and DeVico's undertakings. Hence, we find Superior Court to have erred in granting a money judgment in favor of Ronamy and against the Johnsons after declaring unenforceable Ronamy's second mortgage on the Johnsons' Delaware residence.

## I

We first address Superior Court's ruling (the subject of Ronamy's cross-claim) that the Delaware Secondary Mortgage Loan Act applies to Ronamy's suit to foreclose the Johnsons' second mortgage against their Delaware residence. We then take up the issue raised by the Johnsons' appeal— the effect of Ronamy's securing of an invalid secondary mortgage on the Johnsons' collateral undertakings in favor of Ronamy, that is, the enforceability of their installment judgment note and agreement of "guarantee and suretyship."

Ronamy asserts essentially three arguments against application of the Delaware Act. *One*, since the Johnsons were neither borrowers nor beneficiaries of Ronamy's loan, their obligation to Ronamy arises solely as security for their performance of a guaranty separate and distinct from the primary loan. Hence, Ronamy argues, the Johnsons' second mortgage is not protected by the Act because it does not "aris[e] out of a secondary mortgage loan." 5 *Del.C.* § 3129. *Two*, the loan being entirely a Pennsylvania transaction, involving a Pennsylvania lender and borrower that was consummated in Pennsylvania, under choice of law principles, Pennsylvania's law, not Delaware's, should control the guaranty contract and the related second mortgage. *Three*, application of Delaware, rather than Pennsylvania, law denies Ronamy due process and equal protection and violates the full faith and credit clause.

Ronamy's first argument is premised upon a construction of 5 *Del.C.* § 3129, which we find to be unwarranted. We refer to Ronamy's effort to treat as separate and distinct transactions a four-party debt and guaranty undertaking by Ronamy with Diner, DeVico and the Johnsons that was fully integrated and interdependent. Ronamy reasons that the bar of section 3129 only extends to an obligation arising out of a secondary mortgage loan not negotiated and made in compliance with the Act. 5 *Del.C.* § 3129 provides:

**Enforceability of loan not made in compliance with this chapter.**

No obligation arising out of a secondary mortgage loan shall be enforceable in the courts of this State unless such loan was negotiated and made in full compliance with this chapter.

Ronamy points out that the term "loan" is not defined under the Act and the phrase "secondary mortgage loan," though defined under section 3101(1), is not helpful.

Ronamy then argues that the term "loan" must be given its commonly accepted meaning, that is, as involving the creation of a debt through delivery and receipt of a sum of money which is to be repaid.[1] Thus, the argument goes, since the Johnsons received nothing in the form of credit, they cannot be considered to be a party to a loan. Hence, their obligation to Ronamy (though it took the form of a second mortgage) did not arise from a loan since they were not the borrowers.

In *First Nat. Consumer Discount Co. v. Fuller*, Del.Supr., 419 A.2d 940 (1980), we rejected a similar argument by a foreclosing lender-holder of a secondary mortgage on Delaware residential real estate. There the lender argued that the Act should not be construed as extending to a second mortgage on individual guarantors' residential property taken as collateral security to guaranty a corporate loan. We held that the Act's protective benefits extended to the sole owners and individual guarantors of a corporate borrower. To hold otherwise and permit the Act's application to turn upon the particular status of the loan recipient would render the Act "easily circumvented." And we found no language in the Act to suggest the distinction proposed by defendants. *Id.* at 941.

We find *Fuller* to be dispositive not only of a liberal and expansive reading of the Act's purpose but of its application to guarantors Johnson.

The Act appears to have been designed to protect Delaware residents from predatory secondary mortgage loan practices, exorbitant charges, and misleading advertising. The provisions of the Act would be almost meaningless if they could be so easily circumvented because the applicability of the Act is deemed to be conditioned upon the particular status of the loan recipient. The defendants' home was subjected to the risk of foreclosure whether the loan was made to defendants personally or to a corporation owned by them with their property pledged to secure it. There is no language in the Act which suggests the distinction proposed by defendants.

*Id.* at 941.

Ronamy also misreads the underlying purpose of section 3129. Ronamy reads the section as simply defining the scope or limits of the Act's application to secondary mortgages. We read section 3129 as declaring the consequences to a lender of procuring a secondary mortgage not in compliance with the Act. This seems apparent from the section's subcaption, "Enforceability of loan not made in compliance with this chapter." 5 *Del.C.* § 3129. The section declares that "[n]o obligation arising out of" an invalid second mortgage shall be enforceable. *Id.* We do not read section 3129 as confining the bar of unenforceability and the protective benefits of the Act only to a grantor of a second mortgage who is also the recipient of a loan from the lender-mortgagee. Nor do we read the Act as excluding from its protective coverage an invalid second mortgage granted by a third-party guarantor of a loan.

 In our view of the Act, any grantor of a non-conforming second mortgage may invoke the Act's protective benefits whether he be the loan recipient or its guarantor. The Act does not condition its bar to enforceability of an invalid second mortgage upon the mortgagor's relationship to the

---

1. *Black's Law Dictionary* defines "loan" as "A lending. Delivery by one party to and *receipt by* another party of sum of money upon agreement, express or implied, to repay it with or without interest." *Black's Law Dictionary,* 844 (5th ed.1979) (Emphasis added). Moreover, the term "loan" is said to include:

　　1) The creation of debt by the *lender's payment of or agreement to pay money to the* debtor or to a third party for the account of the debtor; 2) the creation of debt by a credit to an account with the lender upon which the debtor is entitled to draw immediately; 3) the creation of debt pursuant to a lender credit card or similar arrangement; and 4) the forebearance of debt arising from a loan. *Id.* (Emphasis added).

mortgagee in the underlying debt transaction.

■ Ronamy's remaining argument that the Johnsons' guaranty represented a transaction separate and distinct from the primary loan to Diner is simply contrary to the facts.[2] The loan instruments executed in this case clearly establish that the Johnsons' undertakings were not considered by Ronamy to be separate and distinct transactions and independent of its loan to Diner. The installment judgment note signed by the Johnsons as "Sureties" recites that each of the undersigned "agrees to be liable hereon as principal...." The Johnsons' commitment under the surety and guaranty agreement is expressly stated to be "in consideration of" Ronamy's loan to Diner. Finally, the Johnsons' grant of a second mortgage on their Delaware residence to Ronamy recites the mortgage to be given as security for Diner's repayment of its loan to Ronamy. Thus, the instruments executed by the Johnsons blur any distinction between Diner as obligor and the Johnsons as guarantor in terms of Ronamy's right of recourse against both for Diner's default. The argument that the Johnsons "cannot be considered a party to any loan" must be rejected as specious.

■ We turn to Ronamy's second argument—that the Delaware Act has no application because Pennsylvania law controls Johnsons' guaranty and suretyship contractual undertaking with Ronamy. *Restatement (Second) of Conflict of Laws* § 194 (1971) provides as follows:

> Section 194. *Contracts of Suretyship*
> The validity of a contract of suretyship and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the law governing the principal obligation which the contract of suretyship was intended to secure, unless, with respect to the particular issue, some other state has a more significant relationship under the principle stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Since lender Ronamy and borrower Diner are both Pennsylvania corporations, the validity of the suretyship undertaking of the Johnsons is to be determined under Pennsylvania law "unless, with respect to the particular issue, some other State has a more significant relationship under the principle stated in Section 6."[3] Ronamy then reiterates its now-rejected argument that the Delaware Act does not invalidate secondary mortgages not in compliance with the Act which are given as security by a guarantor rather than by the loan recipient. We also note that while the loan papers were presumably executed by Diner and DeVico in Pennsylvania, the Johnsons executed all the documents in the State of Delaware, including the Delaware second mortgage, the judgment bond, the judgment note and the agreement of "unconditional guarantee" and suretyship.

**2.** Ronamy required the Johnsons to execute the following instruments as a condition to its disbursement of funds to Diner: (1) Ronamy's loan application form submitted by Diner which recites as security for the loan the Johnsons' Delaware real estate as well as DeVico's individually owned real estate in Pennsylvania; (2) Ronamy's loan settlement sheet (authorizing Ronamy to distribute the loan proceeds to Diner); (3) their judgment bond (on a Delaware form) obligating themselves to Ronamy for the repayment of the loan without mention of Diner as the primary obligor or recipient of the recited sum; (4) an installment judgment note signed by the Johnsons as "Sureties" of the principal obligor Diner; and (5) a Delaware mortgage form signed by the Johnsons, mortgaging their Delaware real estate "as security" for Diner's repayment of its loan to Ronamy. The parties have stipulated that *all* documents signed by the Johnsons were executed in Delaware (notwithstanding that the mortgage contains an acknowledgment before a Pennsylvania notary public).

**3.** Section 6 of the *Restatement (Second) of Conflict of Laws* states under paragraph (1) thereof: "A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Subsection (2) of section 6 then details the factors to be considered in choosing the applicable rule of law "[w]hen there is no such directive." [Subparagraph (a) through (g) omitted.]

Superior Court correctly rejected Ronamy's argument by concluding that the guarantor Johnsons' grant of a second mortgage "falls within the intended range of application" of the Delaware Act, with which it admittedly failed to comply. *Oxford Consumer Discount Co. v. Stefanelli*, 102 N.J.Super. 549, 246 A.2d 460 (1968), *aff'd*, 55 N.J. 489, 262 A.2d 874 (1970) (applying *Restatement (Second) of Conflict of Laws* § 6, comment b, which states:

> b. *Intended range of application of statute.* A court will rarely find that a question of choice of law is explicitly covered by statute. That is to say, a court will rarely be directed by statute to apply the local law of one state, rather than the local law of another state, in the decision of a particular issue. On the other hand, the court will constantly be faced with the question whether the issue before it falls within the intended range of application of a particular statute. The court should give a local statute the range of application intended by the legislature when these intentions can be ascertained and can constitutionally be given effect. If the legislature intended that the statute should be applied to the out-of-state facts involved, the court should so apply it unless constitutional considerations forbid....).

We adopt Superior Court's reasoning that for the purpose of the Act's application to the determination of the validity of the Delaware second mortgage—no distinction should be made between a borrower recipient of a loan and a guarantor non-recipient.

> [Ronamy] places undue emphasis on the issue of who or what actually receives the proceeds of the loan. The important consideration is whether, as here, the defendant's obligation is in the form of a secondary mortgage. 419 A.2d 940. The Johnsons are within the class of persons the Act was designed to protect.

■ We find no merit to Ronamy's third argument: that application of the Delaware Act, rather than Pennsylvania law, to Delaware resident guarantors as well as loan recipients denies Ronamy due process and equal protection and violates the full faith and credit clause. While Ronamy asserted the argument below, Superior Court summarily rejected it for good reason—Ronamy's lack of any legal authorities for the alleged constitutional infirmities. A similar argument was summarily rejected in *Fuller, supra,* for lack of a factual record at the trial level to support lender's contentions. Assuming Ronamy has standing to assert a claim that the Act as applied to the Johnsons violates the equal protection clause, Delaware has a legitimate interest in protecting from "predatory secondary mortgage loan practices" its residents who are loan guarantors as well as loan recipients. The protection of loan guarantors is clearly not wholly irrelevant to achievement of the Act's objective. *Cf. Lacy v. Green,* Del.Super., 428 A.2d 1171 (1981). Ronamy has also not met its burden of overcoming the presumption that the Act as so construed is constitutional. *Justice v. Gatchell,* Del.Supr., 325 A.2d 97 (1974). Equally clearly, Ronamy has not been deprived of recourse to the court or procedural due process. *Slawik v. State,* Del.Supr., 480 A.2d 636 (1984). Nor has Ronamy made even a *prima facie* showing of a full faith and credit claim without proof that under comparable Pennsylvania law a different result would be reached.

## II

■ We turn to the Johnsons' appeal of Superior Court's grant of a money judgment against them on their agreement of guaranty. The Court concluded that "because it was executed pursuant to [or extended to] a [valid] Pennsylvania secondary mortgage, [the guaranty] is unimpaired and enforceable." The trial record discloses little, if any, consideration by the Johnsons of Ronamy's joinder in its mortgage foreclosure action of a suit for an *in personam* judgment on their related note and guaranty undertakings to Ronamy and little, if any, prejudgment briefing of this

aspect of the case by the parties.[4] Nevertheless, the Court granted summary judgment in favor of Ronamy and against the Johnsons on their guaranty of Diner's debt "and all security incident thereto, with the exception of the aforementioned [Delaware] mortgage." One year later, the Court entered judgment against defendants Johnson on their guaranty. Judgment was for the principal sum of $15,357.21, together with interest at 18% per year from September 1, 1980, and counsel fees of 5% of principal and interest.

To address the Johnsons' guaranty liability, we must return to the Act and again focus on its enforceability section 3129, stating, "No obligation arising out of a secondary mortgage loan shall be enforceable in the courts of this State unless such loan was negotiated and made in full compliance with this chapter." 5 *Del. C.* § 3129. The question now addressed is: The Johnsons' Delaware second mortgage having been determined to be invalid and unenforceable by Ronamy, do the Johnsons guarantee and other collateral undertakings remain enforceable by Ronamy under the Act? Or, conversely, is the language of section 3129 of the Act not intended to work against Ronamy a penalty or forfeiture of all related obligations or undertakings of the Delaware second mortgagor?

Ronamy seeks to avoid this result, *first,* by attempting to disassociate the Johnsons' three collateral undertakings (judgment bond, judgment note and guarantee and surety agreement) from Ronamy's invalid mortgage security interest. *Second,* Ronamy urges a narrow construction and literal interpretation of section 3129 so as to confine its application to the loan itself, of which Diner alone was the recipient. Ronamy then reiterates its position (previously rejected) that the Johnsons as obligors receive no protection under the Act because their obligations to Ronamy are covered by a "separate contract of guaranty, executed voluntarily by them." For reasons previously stated, we think the record belies Ronamy's effort to compartmentalize the transaction. We also conclude that section 3129 must be construed as a penalty or forfeiture statute in order to give the Act its intended effect, that is, to protect Delaware residents, guarantors as well as obligors, from unlawful secondary mortgage practices.

As we see it, the question becomes one of legislative intent: whether a second mortgagor's collateral undertakings executed concurrently with and as an integral part of a secured transaction declared to be contrary to public policy are to be rendered unenforceable by operation of law under section 3129.

We agree with Ronamy that *Fuller* is distinguishable on its facts with respect to the relationship of the guarantor to the obligor. In *Fuller,* the individual guarantors were also the equitable owners of the corporate borrower. Here, the undertakings of the Johnsons as guarantors are also considerably broader in terms of the instruments they were required to sign for the loan to Diner to be granted by Ronamy. The breadth of the Johnsons' guaranty also extends beyond Diner's undertakings to those of DeVico and include his grant of an apparently valid second mortgage against his real estate in Pennsylvania.

However, while *Fuller* is distinguishable, we nevertheless conclude that *Fuller's* mandate—that the Act is not meant to be applied with technical precision—has equal application to the Johnsons as guarantors in this case. We so conclude because of our prior findings that the Johnsons' other undertakings clearly appear to have been part of an integrated loan and guarantee transaction under which the Johnsons' several undertakings have been made a condi-

---

4. The manner in which Ronamy filed suit in Delaware may have diverted defendants' focus from the *in personam* claims for relief stated by the Complaint. We refer to Ronamy's resort to an *in rem* action to foreclose the Johnsons' mortgage under an age-old common law execution writ authorizing summary procedure for obtaining judgment and satisfaction from a mortgagor in default.

tion to the grant of any loan to Diner. Under our previous analysis of the instruments, the Johnsons' liability to Ronamy is coextensive with that of Diner and DeVico, with the only difference being that loan money was furnished the latter rather than the Johnsons.

Viewing the entire transaction between these parties as an integrated whole, we discern the Delaware legislative intent to be to declare unenforceable by Ronamy, as a non-complying lender, any and all obligations and undertakings of the Johnsons to Ronamy.

In our view, the underlying purpose of the Act would be frustrated and the Act rendered largely ineffective were Ronamy permitted ultimately to execute on the Johnsons' Delaware residence through enforcement of the Johnsons' agreement of guarantee or any other of their written undertakings. Yet this would be the ultimate result of a contrary holding. Nevertheless, we reserve for another day the unanswered question in *Fuller;* that is, whether the Act should be construed as exonerating a borrower-recipient of a loan from making restitution of funds secured by an invalid secondary mortgage.

\* \* \* \* \* \*

Reversed as to the appeal and affirmed as to the cross-appeal and remanded with directions to set aside the money judgment entered in favor of Ronamy and against the Johnsons.