FINANCIAL CREDIT CORPORATION *v.*
WILLIAMS, ᴇᴛ ᴜx.

[No. 335, September Term, 1966.]

*Decided May 4, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*Norman F. Summers,* with whom was *Harry I. Kaplan* on the brief for appellant.

*Charles C. W. Atwater* and *Leonard J. Harmatz,* with whom were *David H. Cohen* and *Marvin T. Harmatz* on the brief for appellees.

BARNES, J., delivered the opinion of the Court.

The Williams' (appellees) entered into a contract with Peerless Construction Company and/or Reynolds Engineering & Supply Company [1] on October 21, 1958. Peerless agreed to make certain improvements on the Williams' home and to pay the balance then owing on their automobile. The Williams' promised to pay $3200 in monthly installments. Subsequent to the execution of the contract, the Williams' executed a promissory note in the amount of $6399.60 and a mortgage of their residence property to Reynolds Engineering securing payment of this amount. The mortgage provided that payment was to be made in 120 monthly installments of $53.33 each. The mortgage and note, after a number of mense assignments, were purchased by Financial Credit Corporation (appellant) on June 6, 1963.

The appellees filed a Bill of Complaint on August 19, 1965, in the Circuit Court for Baltimore City, alleging that the difference between the amount of the mortgage to Reynolds ($6399.60) and the amount the Williams' promised to pay by the initial contract ($3200) represented "interest" and, as such, was usurious since it was above the legal rate of six per cent,

---

1. The record is unclear as to which company was the contracting party, but for purposes of this case the point is immaterial.

provided by Maryland Code, 1957, Article 49, section 1. Proof proceeded on the theory that the appellees' signatures on the mortgage and note were obtained by fraud as well as on the theory of usury.

The appellant defended on the grounds 1) that it was a holder in due course of the note and a bona fide purchaser of the mortgage, and 2) that the complainants-appellees were guilty of laches. No objection was made to appellees' evidence of fraud, even though fraud was not alleged in the Bill of Complaint. After a full hearing on the merits, the lower court concluded:

1. The mortgage and the note were not only usurious, but were originally obtained from the appellees by Reynolds Engineering and/or Peerless Construction by fraud and deception, and were signed by the Williams' "without even knowing the nature of those instruments."

2. The appellant obtained an assignment of the mortgage and note on June 3, 1963, in good faith, for value and without actual or constructive notice of the original fraud or any defect in the title of its assignor. The appellant did not obtain notice that the mortgage and note were fraudulent in their inception until August, 1965, when notified of the alleged fraud by the appellees' attorney.

3. The appellees were not guilty of laches in asserting their claim against the appellant.

Applying Maryland Code, 1957, Article 13, section 75, the Negotiable Instruments Law (NIL),[2] which was in effect when the mortgage and note were executed, the court concluded the appellant was a "holder in due course of the note only to the extent of $704., this representing 'the extent of the amount' paid by the respondent [appellant] for the mortgage and note."

---

2. Article 13, §75 (NIL) provided:

"Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him."

The Negotiable Instruments Law was repealed, effective February, 1964. Acts of 1963, ch. 538.

The court, on April 25, 1966, awarded the appellees a monetary decree for $682.58, the difference between the amount paid by the Williams' to Financial Credit Corporation on the mortgage and note ($1386.58) and $704. The decree also required Financial Credit Corporation to deliver to the Williams' a release of the mortgage and the note marked "paid in full." Both Financial Credit Corporation and the Williams' appealed to this Court from the decree.

We are of the opinion that the decree of the lower court should be modified in respect to the recovery allowed to the appellees. In reaching this conclusion, we must first review, at the appellant's insistence, the crucial finding below that "the complainants had been fraudulently induced to sign the mortgage and note, without even knowing the nature of those instruments." We cannot say this finding of fraud was clearly erroneous; indeed the record is replete with uncontradicted testimony tending to show that the appellees' signatures on the mortgage and note were obtained by concealment, trickery and misrepresentation.

### (1) Evidence of Fraud

Mr. Williams, a Baltimore Transit Company operator, testified that a Reynolds Engineering salesman came to his home and asked if the Williams' needed any repairs or improvements on the house. The salesman quoted a price of approximately $500 for the installation of storm windows and storm doors. At the time, the Williams' owed $2160, payable in 120 weekly installments of $18 each, on a recently purchased automobile. The salesman "showed" the Williams' how his company would make the home improvements and assume the weekly car payments, at a cost to the Williams' of $53.33 per month. This amount was less than the monthly sum payable on the automobile. The salesman filled in an "order and contract" allegedly in accordance with this proposal, which the Williams' signed. The contract did not show the total price of the job, but provided for 120 monthly installments of $53.33 each ($6399.60). Approximately one week later, the Williams' received by mail a typed copy of the original contract, stating that the total price of the job was $3200. Mr. Williams' un-

contradicted testimony was that he understood $3200 was all he was obligated to pay.

Sometime thereafter, according to Mr. Williams' uncontradicted evidence, the salesman came to the house with some papers for the Williams' to sign. Among them were a mortgage and note in the face amount of $6399.60. The papers were placed on the table in a manner which prevented the Williams' from seeing the nature of the documents. The Williams' did not see the body of the mortgage or note, but, being assured by the salesman that their signatures were necessary to complete the formalities of the contract, signed what was placed in front of them. Although the mortgage contained a purported acknowledgement by the mortgagors before a Notary Public, Mr. Williams further testified he did not appear before a notary.

We deem significant, in reviewing the sufficiency of the evidence of fraud, that the testimony on the point is entirely uncontradicted. Neither the salesman nor any official of Reynolds Engineering or Peerless Construction nor the notary was subpoenaed by the appellant or produced to rebut Mr. Williams' testimony. Nor did the appellant show they were unavailable as witnesses. The consistent and uncontradicted nature of Mr. Williams' testimony is itself sufficient to distinguish this case from *Cromwell v. Sharon Bldg. & Loan Assn.*, 220 Md. 317, 152 A. 2d 548 (1959) and *Golden v. Kovner Bldg. & Loan Assn.*, 156 Md. 167, 143 Atl. 708 (1928) where no fraud was shown. In these cases, the lower courts were sustained in their findings upon conflicting and inconsistent evidence, that fraud had not been shown.

We believe there was ample testimony in the present case to show that unfair and unconscionable methods were used in obtaining the execution of the mortgage and note by Reynolds Engineering, the appellant's assignor. At least, we can not say the finding was clearly erroneous. See, e.g., *Wohlmuther v. Mt. Airy Plumbing & Heating, Inc.*, 244 Md. 321, 223 A. 2d 562 (1966); *Margolis v. Joh and Furman*, 243 Md. 216, 220 A. 2d 542 (1966).

## (2) Effect of Fraud

The finding of fraud, amply supported by the evidence, means that as between the Williams' and the original mortgagee, the mortgage was an absolute nullity. It can have no greater value in the hands of the appellant-assignee even if the assignee be deemed a bona fide purchaser for value. *Hunter v. Chase,* 144 Md. 13, 123 Atl. 393 (1923). The appellant, as an assignee of the mortgage, is in Maryland subject to the equities and defenses of the mortgagor against the original mortgagee. *LeBrun v. Prosise,* 197 Md. 466, 475, 79 A. 2d 543 (1951), and many cases therein cited.

The question remains of the appellant's rights as assignee of the note. It has been suggested that under Code, 1957, Article 66, section 26, a promissory note, secured by a mortgage, is non-negotiable. See Page, *Latent Equities in Maryland,* 1 Md. L. Rev. 1, 26 (1936), but see, *Sapero v. Neiswender,* 23 F. 2d 403 (4 Cir. 1928). If such notes are non-negotiable, an assignee similarly takes the instrument subject to all equities and defenses which the maker had against the original payee. The point has never been expressly decided by this Court, however, and we do not reach it in the present case. We assume, *arguendo,* that the note in question qualifies as a negotiable instrument and apply the relevant sections of the Negotiable Instruments Law, (NIL) Code, 1957, Article 13, sections 15-211, which were applicable to the transaction.[3]

The lower court concluded that the appellant was a holder in due course of the note within the meaning of the NIL., Article 13, section 73. Essential to this conclusion was the court's finding that the appellant obtained the note "in good faith and for value and without actual or constructive notice of the original fraud." Good faith is a condition precedent to status as a holder in due course. Upon a showing that the title of the original assignor, Reynolds Engineering, was defective, the burden of proving good faith shifted to the appellant-assignee. Article 13, section 80. *LeBrun v. Marcey,* 199 Md. 223,

---

3. As above noted, the Negotiable Instruments Law was repealed by Acts of 1963, ch. 538, effective February 1, 1964, being supplanted by the adoption of the Uniform Commercial Code.

86 A. 2d 512 (1952); *Home Credit Co. v. Fouch,* 155 Md. 384, 394, 142 Atl. 515 (1928); *Griffith v. Shipley,* 74 Md. 591, 22 Atl. 1107 (1891). We believe the appellant failed in its burden of proof, and the finding of the lower court to the contrary is clearly erroneous.

Bad faith under the Negotiable Instruments Law is not mere carelessness or negligence. A purchaser lacks the good faith requisite for attaining holder in due course status only if he has actual knowledge of fraud or other defect in the instrument or if he consciously ignores facts which would lead him to discover the defect. The test is said to be subjective,[4] for a purchaser may be a holder in due course if he purchases with a "white heart" but an "empty head." Hawkland, *Bills and Notes,* 194-97 (1956). Simply put, we can not believe from the evidence in the record that the appellant had a "white heart."

The note and mortgage in question were purchased, as part of a package of approximately 480 such instruments, at an extraordinary discount of over 80%. The size of the discount, while alone insufficient to show bad faith conclusively, has been held enough to support a finding of bad faith by the trier of fact. *Home Credit Co. v. Fouch,* supra; *Williams v. Huntington,* 68 Md. 590, 13 Atl. 336 (1888).

There are other circumstances in the case, however, necessitating the finding of bad faith. The appellant did not buy the instruments blindly, but on two separate occasions prior to purchase, had them audited by reputable firms of lawyers and accountants. The appellant's President, Groves, admitted that after his company had acquired the instruments, it was known that a great percentage of them had been originally obtained by Reynolds Engineering. It is inconceivable to us that the appellant, having twice reviewed the instruments before purchase, did not know Reynolds Engineering was the original

---

4. A recent article, Littlefield, *Good Faith Purchase of Commercial Paper: The Failure of the Subjective Test,* 39 So. Cal. L. Rev. 48, argues forcefully that the tremendous growth of consumer financing has generated the need for an element of objectivity in determining the good faith of purchasers of consumer credit paper. We believe the facts of this case, however, conclusively demonstrate a lack even of subjective good faith.

assignor, and there was no testimony to show the appellant's lack of knowledge on the point.

The woeful history of Reynolds Engineering and of the conspiracy to defraud and cheat homeowners practiced by its officers, directors and salesmen has been previously documented by this Court. *Pearlman v. State,* 232 Md. 251, 192 A. 2d 767 (1963). The appellant's witness, Burkhardt, testified that at the time the appellant obtained the instruments, "every Marylander knew" from the newspapers about Reynolds Engineering's fraudulent activities. Although Burkhardt's company agreed to finance the appellant's purchase of the notes and mortgages, Burkhardt stated he did not know at the time of sale that most of the instruments came from Reynolds Engineering. We think that, absent any contrary proof by the appellant, it must be found to have known that notes and other paper originally obtained by Reynolds Engineering were likely to be tainted with a badge of fraud. The appellant could not consciously ignore the plain facts surrounding the transaction and still maintain that it purchased the instruments in good faith. The suspiciously large discount together with the appellant's knowledge of Reynolds Engineering's relationship to the instruments require us to hold that the trial court's finding of good faith was clearly erroneous. The appellant was not a holder in due course.

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable." Code (1957), Article 13, section 79. The appellees are entitled in equity to have the fraudulent note, and mortgage, declared void and to recover the amounts paid under them, up to the value of anything the appellees received as part of the transaction and until the fraud was discovered by the appellees. Restatement of Restitution, sec. 28, comment c and sec. 65; C.J.S. *Bills and Notes,* sec. 467 d; C.J.S., *Payment,* sec. 155; Am. Jur. 2d, *Bills and Notes,* secs. 994, 1009-10; *Dairyman's State Bank v. Tessman,* 16 Wis. 2d 314, 114 N. W. 2d 460 (1962); *Firestone Tire & Rubber Co. v. Central Nat. Bank of Cleveland,* 159 Ohio St. 423, 112 N. E. 2d 636 (1953). The rule casts the burden of loss on the as-

signee who lacks good faith, rather than on the innocent victim
of fraud who pays without knowledge that he has been de-
frauded.

The theory of restitution entitles the appellees to recover
the sum of $1013.07, representing the difference between the
total amount paid on the fraudulent instruments ($4213.07)
before the appellees discovered the fraud and the original con-
tract price ($3200).

### (3) Usury

The appellees claim, in their cross-appeal, the sum of
$1145.63. The appellees consider the total value of the con-
sideration passing from Reynolds Engineering to them to equal
$2660. ($2160 paid on the automobile loan plus $500, the al-
leged cost of the home improvements). Applying the monthly
payment of $53.33 on a loan of $2660 at a 6% rate of in-
terest, the appellee says, the total amount payable would be
$3067.44.[5] The appellees argue that the difference between
the $4213.07 actually paid and $3067.44 ($1145.63), is a
usurious profit, recoverable from the appellant under Code,
1957, Article 49, section 4.

The court below found the mortgage and note were usurious.
There is insufficient proof, however, to show that any part of
the original contract price of $3200 was usurious. It is evident
that part of the consideration from Reynolds Engineering to the
appellees—the storm windows and doors—constituted a bona
fide sale of personalty at a deferred price greater than the con-
tract price. The usury laws do not apply to this part of the
transaction. *Rothman v. Silver*, 245 Md. 292, 226 A. 2d 308
(1967) and cases therein cited. Mr. Williams testified that he
understood the difference between $3200 and $2660 represented
financing and carrying charges, including life insurance, and
that he was satisfied his debt was $3200. There was no evi-
dence to show that $3200 did not include a "time price" for
the home improvements, which represented charges for insur-
ance, financing and other related services for the privilege of
buying on time rather than by cash. Although the note and

---

5. This sum equals 57 monthly installments of $53.33 and an ad-
ditional payment of $27.63.

mortgage were usurious, the appellees did not meet their burden of proving that the original contract was subject to a like defect. In view of this lack of proof the amount of recovery, in equity, against the appellee on the ground of usury, therefore, is the same amount recoverable on the ground of fraud, $1013.07.

### (4) Laches

The lower court correctly held that the appellees were not guilty of laches in bringing their action on the mortgage and note. Laches will not bar the assertion of a claim in equity unless the party fails to assert his rights within a reasonable time after their discovery. *Berman v. Leckner,* 193 Md. 177, 185, 66 A. 2d 392 (1949) ; *Croyle v. Croyle,* 184 Md. 126, 40 A. 2d 374 (1945). Mr. Williams stated he discovered that he was obligated to pay substantially more than $3200 *on the contract,* three or four months after signing it. He did not discover that he had executed a mortgage and note, however, until August, 1965, shortly before suit was brought. Our decision only affects the parties' rights with respect to the mortgage and note. The appellees were singularly diligent in seeking equitable relief from these instruments, even though laches might possibly bar them from asserting a claim of fraud or usury on the contract.

> *Decree of April 25, 1966 modified by increasing the amount of $682.58 awarded as monetary damages to the complainants (appellees in this court) to the amount of $1013.07, and, as modified, the decree of April 25, 1966 is affirmed; the costs to be paid by the appellant.*