# BLICKENSTAFF ET UX. *v.* BANKERS MORTGAGE COMPANY ET AL.

[No. 255, September Term, 1971.]

*Decided June 9, 1972.*

*Motion for rehearing filed July 10, 1972; denied September 11, 1972.*

The cause was argued before HAMMOND, C. J., ▮ and BARNES, MCWILLIAMS, SMITH and DIGGES, JJ., and

KENNETH C. PROCTOR, Associate Judge of the Third Judicial Circuit, specially assigned.

*William F. Hickey* for appellants.

*Daniel G. Grove,* with whom were *Mark B. Sandground, Amram, Hahn, Sundlun & Sandground* and *Arnold Blank* on the brief, for Atlas Subsidiaries of Delaware, Inc., part of appellees. No brief filed on behalf of other appellees.

DIGGES, J., delivered the opinion of the Court.

The appellants here, Earl O. Blickenstaff and his wife, Mary, initiated this litigation against appellees, Bankers Mortgage Company, Atlas Subsidiaries of Delaware, Inc. and two trustees, A. J. Mascetta and Ralph O. Weed. They sought to set aside both a promissory note held by Atlas and a deed of trust on their home given as security for the note. Appellants also requested that Atlas be enjoined from foreclosing the deed of trust and required to return to them all money which they had previously paid.

This controversy germinated in the relatively serene confines of a beauty salon during March 1965, where appellants' married daughter, Karol Pierce, was an employee. Having indicated to a customer that her parents were interested in obtaining a loan, Mrs. Pierce was told, during the course of a casual conversation, to refer them to Bankers Mortgage Company. Subsequently, the Blickenstaffs were so informed by their daughter and went to this appellee in regard to arranging a $4,000.00 loan. At the meeting Bankers told them to come back in about a week since it would take that long to check their credit references and prepare other preliminary matters. Upon their return they signed various papers which included a deed of trust on their home, a promissory note and a settlement sheet with a disbursement authorization. Appellants claim it was their impression that these documents, of which they were not given copies prior to

instituting this suit, were merely loan applications. They also contend that the settlement sheet and note were not completely filled out when presented to them for their signatures. However, both Mr. and Mrs. Blickenstaff admit that the signatures on all the agreements appear to be theirs and concede they could have read the documents or had them explained, but chose not to do so. Appellants remember signing the deed of trust and then having it notarized in a drug store in Washington, D. C., but say they were not aware of its contents and unacquainted with A. J. Mascetta and Ralph O. Weed, the named trustees.

The full amount of the debt listed on all three documents was $7,397.88 which represented principal, interest calculated to maturity, as well as expenses for procuring the loan. In April of 1965 the Blickenstaffs received three checks from Bankers which totalled the $4,000.00 initially sought and they used this money to satisfy some of their debts. Later that same month or early in May the appellants received a letter from Atlas with a payment book enclosed. This correspondence stated that the promissory note secured by a deed of trust had been purchased by Atlas from Bankers and also explained how the debt would be paid in 84 equal monthly installments of $88.07. On May 7, 1965 the Blickenstaffs promptly made their first payment and for the next two and one half years a total of 30 installments were sent to Atlas without any apparent problem. However, in the fall of 1967 appellants became aware, through the news media, that both Atlas and Bankers were being accused of certain unethical practices. Inspired by these accusations, the Blickenstaffs suddenly concluded that $7,397.88 was too much to repay for originally borrowing $4,000.00 and decided they must have been defrauded. Counsel was sought to rectify this supposed injustice and as a result suit was instituted in the Circuit Court for Montgomery County. There, Judge Pugh, sitting in equity, granted a motion to dismiss at the close of the appellants' case (Maryland Rule 535) and this appeal follows.

The Blickenstaffs' only contention is that in obtaining the $4,000.00 loan they were the victims of fraud perpetrated by the appellees. They claim that such fraud not only vitiates the obligation to repay any or all of the debt but should also free their property of the lien on it. None of the evidence presented supports such a result. To begin with the appellants are not uneducated people. There is no testimony which intimates that Mrs. Blickenstaff was illiterate and the record shows her husband completed the eleventh grade in school. For many years he had been engaged in operating his own car towing business, had previously mortgaged his home and had negotiated at least one other loan. While this does not constitute expertise in the world of high finance, appellants certainly cannot be classified as "babes in the woods" either. Additionally, the Blickenstaffs concede they were given the opportunity to read the documents prior to signing them but elected not to do so. They suggest, however, that Bankers should have encouraged their perusal of the various agreements or alternatively explained the papers to them. While this is an admirable thought, it definitely is not required. The failure to make inquiries so as to obtain information necessary to understand the transaction was due to the negligence of appellants and their imprudence here cannot now be indemnified. *Cromwell v. Sharon Bldg. Assoc.*, 220 Md. 317, 321-22, 152 A. 2d 548 (1959) ; *Bletzer v. Cooksey*, 154 Md. 568, 574, 141 A. 380 (1928) ; *Blum v. Apitz*, 149 Md. 91, 100-01, 131 A. 35 (1925). The parties most interested in protecting appellants should have been appellants and it would be an onerous result to shift that burden to another when the Blickenstaffs were able to care for themselves. Likewise, in considering the claim that the promissory note and settlement sheet were not completely filled out, if omissions actually did exist, there is no evidence to show what these were or whether their absence was material.

Our reading of the settlement sheet containing the disbursement authorizations does not indicate any excessive

or unusual expenses and no testimony was offered which would permit the alteration of this view. It provides in pertinent part as follows:

"DISBURSEMENTS:

| | |
|---|---|
| Earl O. & Mary E. Blickenstaff | $4,000.00 |
| Transfer Tax | 15.00 |
| State Stamps | 7.70 |
| Origination—Mike Mayo | 385.00 |
| Credit Life Insurance | 517.30 |
| Title and judgment search, tax search | 125.00 |
| Recording & Notary | 20.00 |
| Prepaid interest | 2,187.88 |
| Investigation, Credit Report, Picture | 90.00 |
| Settlement Fee $25.00 & Appraisal Fee $25.00 | 50.00 |
| Total | $7,397.88 |

I/We hereby authorize Bankers Mortgage Company to make the foregoing disbursements and expenditures each and all of which have been fully and acceptably explained to me/us prior to the affixing of my/our signature(s) hereto.

We acknowledge receipt of a copy of the above.

/s/ Earl O. Blickenstaff (SEAL)"

These charges all seem reasonable and no evidence was offered to show that the disbursements which total $1,-210.00, excluding principal and interest, were not made as listed. The transfer tax; state stamps; title, judgment and tax search; recording and notary charges; investigation, credit report and picture; and settlement and appraisal fees are not uncommon expenses. If appellants are to argue that the origination fee or credit life insurance cost is indicative of fraud they have presented no evidence whatsoever to support such a claim. The interest

amount of $2,187.88 is spread over the seven years of the loan's duration. For the Blickenstaffs to succeed in their contention it is not sufficient to simply posit that the charge of $3,397.88 is unreasonable for the privilege of borrowing $4,000.00 for seven years. In reality this mathematical analysis is more a testimonial to the fact that being a borrower is not an advantageous position in which to be.

In this case the Blickenstaffs have made bold allegations of fraud but these claims are without bases. They have not demonstrated anything tantamount to either actual or constructive fraud nor have they shown that any of the appellees misled them in obtaining the loan. Appellants place great reliance on *Credit Corp. v. Williams*, 246 Md. 575, 229 A. 2d 712 (1967), claiming it should be controlling here. However, that case is inapposite. In *Williams*, there was uncontradicted testimony that the party claiming fraud was both illiterate and misinformed as to the amount of his debt. He was prevented from examining any of the papers he was signing and thought his total obligation was $3,200.00 when he was actually being charged $6,399.60. In the present case, none of these tainted factors exists and at all times appellants knew what to expect. Mr. Blickenstaff during his testimony stated:

"Q. Going back to the time you originally went to Bankers, you needed, if I understand you correctly, you needed four thousand dollars. Is that right?

A. Right.

Q. You did in fact get that amount of money; did you not?

A. That's right.

Q. It was not all paid to you directly, was it; some was given to you and some was paid to your creditors?

A. That's right.

Q. That was all right with you, though; wasn't it?

A. Yes.

Q. And you recognized, did you not, that you would have to pay interest on this amount of money; didn't you?

A. I beg your pardon?

Q. You recognized, did you not, that you would have to pay interest on the amount of money?

A. Yes, sir.

Q. And you also recognized, did you not, that there would be other charges such as the credit report and other fees attached to the amount of money that you were seeking? You knew that; did you not?

A. I didn't realize that it would amount to that much money.

Q. No; but you knew that there would be some additional charges?

A. I did.

Q. It is also a fact, is it not, Mr. Blickenstaff, that at no time did anyone prevent you from reading any papers or any documents that you signed; did they?

A. No."

Apparently, the Blickenstaffs, after learning that Bankers and Atlas might possibly have been involved in unethical practices, were so blinded by the glare of a prospective "diamond in the rough" that their vision became impaired. However, we are not so distracted and find the trial judge did not err in granting the motion to dismiss. With this holding it becomes unnecessary to discuss whether Atlas was a bona fide purchaser of the note and a holder in due course under the Uniform Commercial Code, Art. 95B, § 3-302 of the Maryland Code (1957, 1964 Repl. Vol.).

> *Decree affirmed.*
> *Costs to be paid by the appellants.*