# ROBERT M. DUCKWORTH ET UX. v. MANUEL BERNSTEIN

[No. 1843, September Term, 1982.]

*Decided October 11, 1983.*

The cause was argued before Liss, Adkins and Getty, JJ.

*Paul J. Feeley* for appellants.

*Gerald Danoff* for appellee.

Adkins, J., delivered the opinion of the Court.

In September 1979, appellants Robert M. Duckworth and Angela M. Duckworth borrowed money from appellee Manuel Bernstein, the transaction having been negotiated by one Al Blank. The loan was secured by a third mortgage on the Duckworths' residence.

In 1982, the Duckworths filed a bill of complaint against Bernstein in the Circuit Court for Baltimore County. In substance, the complaint alleged that the loan was a secondary mortgage loan governed by title 12, subtitle 4 of the Commercial Law Article.[1] They claimed that various aspects of the Secondary Mortgage Loan Law were "deliberately violated" by Bernstein and that he "fraudulently required" them "to sign false statements indicating that the loans were for a commercial purpose when they were not. . . ."[2]

---

1. In their bill of complaint, the Duckworths also raised questions as to a separate 1980 mortgage from them to Bernstein, but not involving Blank. In their brief in this court, the Duckworths have presented no argument regarding this transaction. Therefore, it is not before us on this appeal. Md. Rule 1031. See Jacober v. High Hill Realty, Inc., 22 Md. App. 115, 321 A.2d 838 (1974).

2. Section 12-106.1 (a) of the Commercial Law Article now mandates that "[a] person may not require a borrower, as a condition to receiving a loan, to make any false or misleading statement or characterization that a loan

They prayed for a declaration that the principal amount of the mortgage had been paid in full, and for the damages provided by § 12-413 of the Commercial Law Article. That section provides:

> Except for a bona fide error of computation, if a lender violates any provision of this subtitle he may collect only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan. In addition, a lender who knowingly violates any provision of this subtitle also shall forfeit to the borrower three times the amount of interest and charges collected in excess of that authorized by law.

A hearing was had, but the chancellor did not determine whether the transaction was a commercial loan or a secondary mortgage loan, nor did he issue any declaration as to the rights of the parties. *See Stevan v. Brown,* 54 Md. App. 235, 248, 458 A.2d 466 (1983), *cert. den. sub. nom. Tower Bldg. Corp. v. Stevan,* Md. (1983) (if justiciable issue presented, court should give declaration even if not that sought by requesting party). Instead, concluding that there was insufficient evidence to show that Blank had acted as Bernstein's agent in negotiating the loan, he dismissed the bill.

We think the chancellor was wrong on the agency issue as a matter of law, as well as in failing to declare the rights of the parties with respect to the principal amount of the debts, an issue, as we see it, not dependent on the agency question.

---

is a commercial loan . . . if the loan is not a commercial loan." Penalties are provided in subsection (b). The section was first enacted by Ch. 631, Laws of 1980, in apparent response to legislative concern about "situations where citizens have been victimized by unscrupulous lenders who have been using the 'Commercial Purposes' exemption as a weapon to actually prey upon persons desperately in need of loans." Letter of Dec. 17, 1979, from Delegate (now Senator) Raymond E. Beck to the director of the Department of Legislative Reference. Because this provision did not become effective until July 1, 1980 (it was also augmented by Chs. 512 and 513, Laws of 1983), it does not apply to the case at bar. It is of some interest, however, that the legislature, in enacting § 12-106.1, acted in light of the concept that an affidavit of commercial purposes, such as the one procured in this case, establishes no more than a "rebuttable presumption that the loan was made for commercial purposes." § 12-106.1 (b) (3).

Because of the unusual posture of the case, we conclude that "the substantial merits of the case will not be determined by affirming, reversing or modifying the judgment" below and "that the purposes of justice will be advanced by permitting further proceedings in the cause." Rule 1071. *See Mountain Manor Realty v. Buccheri,* 55 Md. App. 185, 193 *ff,* 461 A.2d 45 (1983). Accordingly, we shall vacate the judgment below and remand pursuant to Md. Rule 1071. Before expressing "the purpose for so remanding" and determining "all questions which may have been properly presented" we shall place the case in its factual and legal contexts.

## Facts

At the hearing below, virtually all of the evidence before the chancellor consisted of testimony by the Duckworths and the introduction of certain documents. Neither Bernstein, the lender, nor Blank, his purported agent, testified. From the record so produced it appears that in the summer of 1979, the Duckworths were in serious financial need because of medical problems experienced by Mrs. Duckworth. At that time, their home was subject to a 1977 first mortgage to Baltimore Building and Loan Association in the amount of $21,000 and to a 1978 second mortgage to Maryland National Bank in the amount of $7,100. After unsuccessfully seeking an additional loan from Maryland National, Mr. Duckworth let his fingers take a walk through the yellow pages of the telephone directory and found an ad with the alluring invitation "We start where the bank stops." He phoned the number given in the ad, and reached Blank, who did business as Equitable Associates.

Blank indicated a willingness to look into a third mortgage on the Duckworth residence. A man visited the home to appraise it. Later, Blank and Bernstein appeared at the home and inspected it, agreeing that it was worth mortgaging. About a week after this, Mr. Duckworth phoned Blank and arranged to meet with him at Blank's office. The meeting occurred on September 4 or 5, 1979.

At the meeting, the accommodating Blank told the Duckworths to take a little time to think about whether they wanted a third mortgage, although he advised them that even if they declined, he would charge them a $1,500 service fee. They left, had a cup of coffee, and returned to the office determined to take the loan because, as Mr. Duckworth testified, "I was in desperate need of money." Blank had all the papers ready, laid out in overlapping fashion so that only the signature lines showed. At the direction of Blank, without reading the papers [3] or asking that they be explained, the Duckworths signed the documents and endorsed several checks. They left the office with a check for $5,100.

The papers the Duckworths signed but did not receive at closing included a "Commercial Promissory Note" to Bernstein in the face amount of $9,000, bearing interest at the effective annual rate of 22.5 percent on the face amount; a mortgage of their home to Bernstein, securing the note and including the statement "Mortgagors further warrant that the proceeds of the loan will be used for the carrying on or acquiring of a business or commercial investment within the meaning of the Annotated Code of Maryland — Commercial Law Article — Title 12"; an affidavit which recited that "[t]he undersigned [the Duckworths] hereby acknowledge that the loan which has been made on this date from Manuel Bernstein in the gross amount of . . . $9,000.00 . . . will be used for the purpose of acquiring, carrying on a business or other commercial purposes and is not in any way to be construed as a personal loan — for purchase of truck;" and a "Statement of Transaction". The last document, which the Duckworths testified they did not receive until sometime after the meeting in Blank's office, included the following information:

BORROWERS: Robert M. Duckworth and
Angela M. Duckworth

---

**3.** Mr. Duckworth testified that he had a sixth or eighth grade education, and he could "read average".

LENDER: Manuel Bernstein

| | |
|---|---|
| GROSS AMOUNT OF NOTE AND LOAN | $9,000.00 |
| Service Fee — Equitable Associates | 3,725.50 |
| Title Search | 50.00 |
| Court Costs — Baltimore County | 49.50 |
| Preparation of Documents | 75.00 |
| Total Expenses | $3,900.00 |
| NET AMOUNT OF LOAN TO BORROWERS | $5,100.00 |

The Duckworths further testified that they were not engaged in any business transaction or commercial enterprise and that no such commercial activity had ever been mentioned to or discussed with Blank. In addition, Mr. Duckworth said he had never owned a truck, did not intend to purchase a truck, and that he had never told Blank he intended to purchase a truck. Introduced in evidence, however, was an undated handwritten letter, which Mr. Duckworth denied writing but admitted signing. He said the letter had been sent to him and he had signed and returned it because Blank said "this had to be done this way so he would not get into trouble. . . ." This was addressed to "Mr. Allen" (the name by which Mr. Duckworth designated Blank) and read:

> I would like to make a loan for $8,000 so I could get a better tractor. I would like my monthly payment about $200.00.
>
> * * *
>
> P.S. This loan will be for commercial purposes.

The letter was contained in an envelope addressed to "Equitable Mortgage Co." at Blank's address and postmarked August 27, 1979. Mr. Duckworth testified that he had never owned a tractor and didn't need a tractor.

There was also testimony that during their visit to Blank's office, they had never sworn to anything before a notary,

although the mortgage and the affidavit were both notarized. No notary testified at the hearing.

The Duckworths made twenty-eight payments of $215.58 each on this loan, for a total of $6,036.24.

### *The Maryland Secondary Mortgage Loan Law*

By Chapter 390, Acts of 1967, the General Assembly enacted the Secondary Mortgage Loan Law "to provide for the regulations *[sic]* of . . . such loans . . . [and] to provide penalties for violations. . . ." The law was codified as part of the Commercial Law Article by Chapter 49, Acts of 1975. Obviously intended to protect a certain class of consumers from unscrupulous lenders, the law, as it existed at the time of the Duckworths' loan in 1979, defined a secondary mortgage loan as

> a loan secured in whole or in part by a mortgage, deed of trust, security agreement, or other lien on real property located in this State, which property:
>
> (i) Is subject to the lien of one or more prior encumbrances, except a ground rent or other leasehold interest; and
>
> (ii) Has a dwelling on it designed principally as a residence with accommodations for not more than four families. Commercial Law Art. § 12-401 (j) (now subsection (i)).

If a transaction falls within the definition, as the Duckworths' 1979 loan plainly did, various protections are afforded the borrower. These protections then included among others:

A maximum effective annual simple interest rate of 16 percent on the principal balance (§ 12-404 (b));

A limitation of 2 percent of the net proceeds of the loan with respect to an origination fee collected by the lender and a prohibition against the lender's collecting "from the borrower any other commission, finder's fee, or point for obtaining, procuring, or placing a loan." (§ 12-405 (a));

A requirement that "[e]xcept as permitted by § 12-405 (a), any commission, finder's fee, or point shall be paid by the lender. . . ." (§ 12-406 (a));

A requirement that certain detailed information as to limitations on the lender, rights of the borrower, the cost of the loan, and the effective annual interest rate be given to the borrower at the time the loan is made (§ 12-407);

A provision that a "lender may not directly or indirectly, contract for, charge, or receive, any interest, discount, fee, fine, commission, brokerage, charge or other consideration in excess of that permitted by this subtitle" (§ 12-411);

A provision for civil penalties (§ 12-413, *supra*).

But the consumer protections afforded by this law do not apply to "[a] commercial loan of more than $5,000, as defined in § 12-101 (c) of this article" (§ 12-401 (i) (2) (ii)).[4] Section 12-101 (c) defines a commercial loan as one which is made:

(1) Solely to acquire or carry on a business or commercial enterprise; or

(2) To any business or commercial organization.

Section 12-103, dealing with the general subject of maximum rates of interest, permits "a lender [to] charge interest at any rate if the loan is . . . [a] commercial loan in excess of $5,000." (§ 12-103 (e) (2)).

### The Agency Issue

As our exposition of the facts shown by the record and of the pertinent statutes make clear, the Duckworth loan was a secondary mortgage loan, and entitled to the safeguards provided in subtitle 4, title 12 of the Commerical Law Article, unless it was an exempt commercial loan. If the loan

---

4. In 1979 the pertinent exemption was contained in § 12-401 (j) and extended to "a loan for business purposes or investment in excess of $5,000." The present language of § 12-401 (i) (2) (ii) was added by Ch. 33, Acts of 1980, an act that adopted the present Financial Institutions Article. We think the new language was for purposes of clarification only, and effected no substantive change.

was in fact a secondary mortgage transaction, a number of the statutory proscriptions for such loans were not observed.

In the trial court, the parties argued mainly on the question of Blank's status as Bernstein's agent. The Duckworths contended that Blank acted as Bernstein's agent in negotiating the loan; that Blank had fraudulently induced them to sign documents indicating that the transaction was a commercial loan when it was not, that Blank's fraud should be attributed to his principal, Bernstein, and that if this were done, it was clear that Bernstein had "knowingly" violated various provisions of the secondary mortgage loan law, and thus was subject to the treble damages penalty of § 12-413. Bernstein's response was that the evidence was insufficient to establish agency, and that Blank had been acting as a mortgage broker on behalf of the Duckworths; *see* title 12, subtitle 8 of the Commercial Law Article, which also exempts commercial loans from its protective coverage (§ 12-802).[5]

We would be hard put to find clearly erroneous the chancellor's finding of insufficient evidence of agency, but for a fact he did not consider. That fact consists of the affidavit of consideration attached to the Duckworth mortgage.

Section 4-106 of the Real Property Article provides in pertinent part:

> (a) No mortgage ... is valid except as between the parties to it, unless there is contained in, evidenced in, or attached to it an oath or affirmation of the mortgagee ... that the consideration recited in the mortgage ... is true and bona fide as set forth.

> \* \* \*

> (c) ... The affidavit may be made ... by an agent of a mortgagee....

5. If the Duckworth transaction was not a commercial loan, Blank was in violation of the 8 percent maximum finder's fee provided by § 12-804 (a).

(d) If the affidavit is made by an agent, he shall make affidavit to be contained in, endorsed on, or attached to the mortgage . . ., that he is the agent of the mortgagee. . . . This affidavit is sufficient proof of agency. . . .

(e) This section does not apply to any mortgage . . . where the loan secured is one in which it is lawful to charge any rate of interest under § 12-103 (e) of the Commercial Law Article of the Code [the commercial loan exemption].

Despite the language of subsection (e), and despite Bernstein's contention that the 1979 transaction with the Duckworths was a commercial loan, the mortgage he took from the Duckworths contained an affidavit of consideration. It was made by the ubiquitous Blank, as agent of Bernstein. After reciting that the Duckworths acknowledged the mortgage to be their act, the affidavit continued:

And at the same time appeared *Albert Blank, agent of the mortgagee,* and made oath in due form of law that the consideration of said mortgage is true and bona fide as therein set forth; that the loan sum secured hereby has been paid over and disbursed by the party secured hereby unto the within named party of the first part [the Duckworths] or the person responsible for disbursement of funds in the closing transaction or their respective agent at a time no later than the final and complete execution and delivery by borrower of this mortgage; *and he further made oath that he is the agent of the party secured by the aforesaid mortgage and that he is duly authorized to make this affidavit* [emphasis supplied].

The affidavit was signed and sealed by a notary public.

The purpose of the oath or affirmation as to agency "is to prevent persons making oath as to the consideration, who were not in fact the agents of the mortgagees." *Milholland v. Tiffany,* 64 Md. 455, 459, 2 A. 831 (1886). This purpose,

together with the statutory language quoted above, demonstrates that the affidavit of consideration attached to the mortgage in this case established the principal-agent relationship between Bernstein and Blank as a matter of law. This is so even though under Bernstein's theory of the transaction an affidavit of consideration would not have been required. It was in fact made. Therefore, the trial court was clearly erroneous in concluding that there was insufficient evidence of agency. We must now consider the scope of Blank's employment as Bernstein's agent and the consequent effect of that agency relationship to Bernstein.

The statutorily-prescribed affidavit of consideration is intended to protect against fraud; chiefly fraud against creditors of the mortgagor. *Phillips v. Pearson,* 27 Md. 242 (1867); *Denton v. Griffith,* 17 Md. 301 (1861); *Cockey v. Milne,* 16 Md. 200 (1860). To achieve this objective, "[t]he Act [now § 4-106 of the Real Property Article] does not provide that the affidavit may show *some bona fide* consideration, but intends that it *shall appear* by the oath of the party taking the deed, that the consideration mentioned therein was the *true cause of making it." Marlow v. McCubbin,* 40 Md. 132, 138 (1874), quoting *Denton v. Griffith, supra,* 17 Md. at 304 [emphasis in original]. If the affidavit is false or fictitious, the mortgagee is in effect bound by his agent's oath or affirmation and the mortgage is void as against creditors of the mortgagor, at least those without notice. *Plitt v. Stevan,* 223 Md. 178, 162 A.2d 762 (1960); *Kline v. Inland Rubber Co.,* 194 Md. 122, 69 A.2d 774 (1949).

Obviously, in this case we are not concerned with creditors of the Duckworths and the status of the 1979 mortgage vis a vis them. But the purpose of the affidavit of consideration and the effect of a false or fictitious affidavit make apparent the importance of accuracy and honesty in that document. The agent must, therefore, have knowledge of the consideration so that he can make the affidavit. His employment as agent to attest to the bona fides of the consideration inevitably contemplates that he obtain such knowledge. He cannot properly make the affidavit without it.

As Bernstein's agent, Blank was required to be aware of the consideration for the mortgage. He in effect swore that the consideration was a $9,000 commercial loan. If Blank in fact knew that the loan was not a commercial loan, that knowledge is ascribed to Bernstein, the principal. Where an agent acquires knowledge in the course of his agency, and has no personal interest in the transaction adverse to the interest of the principal, the agent's knowledge is ascribed to the principal. *Plitt v. Kellam,* 222 Md. 383, 391, 160 A.2d 615 (1960). *See also Baltimore American Ins. Co. v. Ulman,* 165 Md. 630, 170 A. 202 (1934) (knowledge of mortgagee's agent imputed to mortgagee even though agent was also acting as special agent of mortgagor in procuring mortgage); and *Elliott Building and Loan Ass'n v. Karopchinsky,* 156 Md. 302, 144 A. 254 (1929) (agent's knowledge attributable to principal even though agent claimed 10 percent commission from borrowers for obtaining loan). And *see U.S. v. One Chrysler Sedan,* 18 F.Supp. 684 (D.C. Pa. 1937) (imputing of agent's knowledge to principal especially applicable where agent is employed to obtain the knowledge sought to be charged to principal).

The reason for this rule is based on the principle that one who elects to transact his business through another must ordinarily be held accountable for what the other does or does not do in conducting that business. It is the principal who has selected the agent, and if he has chosen unwisely, it is he who should bear the burden, and not a third party who has dealt with the agent to the third party's detriment. *See Tome v. Parkersburg Branch Ry. Co.,* 39 Md. 36 (1873); and 3 C.J.S. "Agency" §§ 432 and 433.

Blank, then, was Bernstein's agent for the purpose of attesting to the bona fides of the consideration for the mortgage. If Blank knew that the transaction was not a commercial loan — one made "[s]olely to acquire or carry on a business or commercial enterprise or . . . [t]o any business or commercial organization" (Commercial Law Art. § 12-101 (c)) (which the Duckworths obviously were not) that knowledge is attributable to Bernstein. If that knowledge existed

and is attributed to Bernstein, Bernstein "knowingly" violated various provisions of the Secondary Mortgage Loan Law. Among other things, the mortgage on its face showed a rate of interest far in excess of that permitted for secondary mortgage loans.[6] Therefore, Bernstein would be subject to the treble damages provisions of § 12-413.

Under this analysis, it is unnecessary to decide whether Blank was Bernstein's agent for the purpose of negotiating the loan, and thus unnecessary to decide on the question of Blank's agency, whether Blank fraudulently induced the Duckworths to sign false commercial loan documents. Thus, so far as agency is concerned, there is no need to take into consideration the principles or factors discussed by the Court of Appeals in cases such as *Blickenstaff v. Bankers Mortgage Co.,* 266 Md. 7, 291 A.2d 480 (1972) and *Financial Credit Corp. v. Williams,* 246 Md. 575, 229 A.2d 712 (1967). Instead, the problem is simply to determine (1) whether the 1979 transaction was a commercial loan (if it was not, it was clearly a secondary mortgage loan) and (2) if it was not a commercial loan, whether Blank knew or should have known this when he executed the affidavit of consideration.

The record before us strongly suggests that both of these questions should be answered in the affirmative. But there is some evidence from which a different inference might be drawn, and even though the testimony of the Duckworths was uncontradicted, there is the matter of their credibility, which is critical on these issues. Because of the basis upon which the chancellor dismissed the bill of complaint, he did not address these questions. Since factual determinations based in part on credibility of witnesses are required, we think it more appropriate for the chancellor to decide these matters on remand than for us to attempt to do so here. Md. Rule 1085; *Colburn v. Colburn,* 15 Md. App. 503, 292 A.2d 121 (1972).

---

**6.** By noting this particular violation, we do not mean to suggest that there were no other violations of the Secondary Mortgage Loan Law and of other laws as well, if the transaction was not a commercial loan.

### Principal Amount of Indebtedness

As we observed early on, the Duckworths also sought a declaration which, in effect, would have limited Bernstein to recovery of the principal amount of the 1979 loan, and which would have determined that they had already repaid at least that amount. The chancellor did not pass on this issue, nor did he make any declaration of rights. This was error, as we have noted.

This aspect of the case does not turn on any question of agency. The first sentence of § 12-413 of the Commercial Law Article provides: "Except for a bona fide error of computation, if a lender violates any provision of this subtitle he may collect only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan." This language, unlike the second or treble damages sentence of the same section, does not require a *knowing* violation of the Secondary Mortgage Loan Law, but simply a violation to trigger its sanctions.

The statutory language appears clear in this regard, and such an interpretation is consistent with the protective purposes of the statute. It is a law intended to guard the foolish or unsophisticated borrower, who may be under severe financial pressure, from his own improvidence. The law achieves this beneficent purpose by penalizing even the unwitting violator, to the extent of limiting him to recovery of the principal amount of the loan. This is consistent with the strong Maryland policy against usury. *See Plitt v. Kaufman,* 188 Md. 606, 612, 53 A.2d 673 (1946). It is also consistent with the legislative approach to consumer protection illustrated in *Brown v. Doug Griffith Dodge City,* 52 Md. App. 687, 452 A.2d 984 (1982).

In *Brown,* the purchaser's copy of an installment sales contract was unsigned by the seller. Concluding that this violated § 12-605 of the Commercial Law Article, which requires an exact copy of such a contract to be delivered to the buyer, we held that the buyer was entitled to the return of all money he had paid under the contract. Chief Judge Gilbert, for the court, reasoned:

The result we think to be dictated by the statute is harsh with respect to . . . Doug Griffith Dodge City Inc., but it is to be borne in mind that the Legislature wanted to protect the buyer. To accomplish that end, it placed severe penalties upon sellers who failed to comply with the statutory requirements of the Retail Sales Instalment *[sic]* Act. 52 Md. App. at 698.

Even more closely on point is *Schmidt v. Beneficial Financial Corp.*, 285 Md. 148, 400 A.2d 1124 (1979). In that case, a lender apparently honestly but incorrectly believed that a transaction was subject to the Consumer Loan Law; Commercial Law Art., title 12, subtitle 3. He charged interest at the rate of 18 percent, as then permitted by that law. Finding that the loan was in fact subject to the Secondary Mortgage Loan Law, the Court of Appeals said:

We find no ambiguity or obscurity within the confines of the Secondary Mortgage Loan Law with respect to the interest which may be charged on a secondary mortgage loan. . . . It baldly proscribes the making of *any secondary mortgage* loan except within the terms and conditions authorized by it. § 12-412. In the face of this clear language we need look no further to ascertain the legislative intent. The Legislature certainly intended that the terms and conditions of the Secondary Mortgage Loan Law apply to any loan which is . . . within the meaning of a secondary mortgage loan. 285 Md. at 156 [emphasis in original].

The court reemphasized the point: "Simply stated, if a loan within the meaning of a secondary mortgage loan under the Secondary Mortgage Loan Law is made by a lender as defined by that law, the loan is subject to the provisions of the Secondary Mortgage Loan Law." 285 Md. at 159.

We hold that if the 1979 Duckworth loan was in fact not a commercial loan, it was a secondary mortgage loan and Bernstein is not entitled to be paid more than the principal amount of the debt.

As in the case of the treble damages issue, the application of our holding in this case depends upon the chancellor's decision, on remand, with respect to whether the 1979 transaction was in fact a commercial loan. In addition, with respect to the repayment of principal issue, if the chancellor finds there was no commercial loan, he must determine what the principal amount of the loan was. Among the matters to be considered in that regard is the fee charged by Blank for his "services". It was well in excess of the origination fee permitted to a lender by § 12-405 (a). It was well in excess of the finder's fee permitted a broker under § 12-804. Those limitations apply if the commercial loan exemption does not. In addition, under the Secondary Mortgage Loan Law, a commission or finder's fee, except one permitted by § 12-405 (a), must be paid by the lender, not the borrower. And "[a] lender may not directly or indirectly, contract for, charge, or receive any interest, discount, fee, fine, commission, brokerage, charge, or other consideration in excess of that permitted by this subtitle." § 12-411. Furthermore, a fee in excess of that permitted by § 12-804 which is paid out of the proceeds of the loan is considered as interest. § 12-805 (b).

If the chancellor concludes that the 1979 transaction was not a commercial loan, those provisions should be taken into account in determining the actual principal amount of the loan, and the amount of interest paid.

## Proceedings on Remand

To recapitulate briefly, we have held that Blank was Bernstein's agent in making the affidavit of consideration on the 1979 mortgage and that knowledge Blank then had or should have had as to whether the transaction was a commercial loan is imputable to Bernstein. If the chancellor finds that the loan was not a commercial loan, but a secondary mortgage loan, the loan was in violation of the Secondary Mortgage Loan Law and Bernstein is subject to the penalties for knowing violation prescribed by the second sentence of § 12-413 of the Commercial Law Article. We have

also held that irrespective of any knowledge on Bernstein's part, imputed or otherwise, if the loan was not a commercial loan, he may recover no more than the principal amount of the loan.

On remand, the chancellor must determine whether the 1979 loan was a commercial loan. If he so finds, the matter is concluded and judgment should be entered for Bernstein. If he does not so find, the transaction was a secondary mortgage loan, and he must then further find whether Blank knew or should have known the transaction was not a commercial loan. If he finds the requisite knowledge, he must then calculate the damages due the Duckworths under the second sentence of § 12-413 and enter judgment for the Duckworths in that amount.

Even if he finds that Blank neither knew nor should have known that the loan was not commercial, he must calculate the principal balance on the loan and frame a declaratory decree stating the amount of principal Bernstein is entitled to recover. If Bernstein has already been paid more than that amount, the Duckworths are entitled to judgment for the excess.

The 1980 mortgage which we have not considered in this opinion will also be before the chancellor for appropriate disposition.

On remand, the Duckworths are entitled to amend their bill of complaint, if they choose to do so promptly. A hearing shall be held at which additional evidence may be introduced. After that hearing, the chancellor will be in a position to make the findings required by this opinion, together with others that may be appropriate, and to make final judgment in the case.

> *Judgment vacated pursuant to Md. Rule 1071.*
> *Case remanded for further proceedings not inconsistent with this opinion.*
> *Appellee to pay the costs.*